STATE OF CONNECTICUT *v.* JOSHUA D. LAMBERT
(AC 20106)

Schaller, Dranginis and Daly, Js.

Argued November 26, 2001—officially released July 2, 2002

Donald D. Dakers, special public defender, with whom, on the brief, was Arthur P. Meisler, special public defender, for the appellant (defendant).

Harry Weller, senior assistant state's attorney, with whom, on the brief, were John Cornan, acting state's attorney, and Patricia A. Swords, former state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Joshua D. Lambert, appeals from the judgment of conviction, rendered after a jury trial, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (3)[1] and conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48[2] and 53a-134 (a) (3). On appeal, the defendant claims that the trial court improperly (1) denied his motion for a new trial and (2) permit-

[1] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (3) uses or threatens the use of a dangerous instrument . . . ."

[2] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

ted prosecutorial misconduct during closing argument. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the defendant's appeal. At approximately 10 p.m. on June 13, 1998, three men robbed Christy's Market at 110 Main Street in Stafford. Three eyewitnesses in a parked car outside the store observed the three men fleeing Christy's through the store's front door. After the police were summoned, a canine track was conducted. The track began at the rear of Christy's, where a jacket had been discovered on the ground, and ended a few blocks away where a state police trooper had detained two men matching a description of the men who had fled Christy's. The dog began barking at the two individuals, indicating that one of them had been wearing the jacket. The eyewitnesses from Christy's identified the detainees, Todd Misuraca and Justin Buchanan, as two of the three people they had seen running from the store. Both individuals were taken to the state police Troop C barracks for questioning.

A second canine track from the rear of Christy's led to 27A Center Street, the home of the defendant. During questioning at the Troop C barracks, Misuraca admitted that he, Buchanan and the defendant had robbed Christy's Market. Misuraca also implicated the defendant, Buchanan and himself in a robbery earlier that day at the Eagle Mart convenience store at 2 Spring Street in Stafford. The three men were arrested and charged with the Christy's robbery on the basis of Misuraca's confession. Buchanan and the defendant later made their own statements in which they admitted to having committed the Christy's robbery. Misuraca subsequently recanted his confession to having committed the Eagle Mart robbery.

During the defendant's trial, the state filed a motion in limine to preclude all evidence related to the Eagle

Mart robbery, claiming that such evidence would be more prejudicial than probative and would distract the jury. The court ordered that if the state offered Misuraca's confession regarding the robbery at Christy's for *Whelan*[3] purposes, then the confession and subsequent recantation as to the Eagle Mart robbery would be admissible. If the state offered Misuraca's confession about Christy's for impeachment purposes only, however, the confession as to the Eagle Mart robbery would not be admissible. At trial, Misuraca testified that he had not been with the defendant on the evening of June 13, 1998, when the Christy's robbery had occurred. The state proceeded to use Misuraca's confession as to the Christy's robbery to impeach his trial testimony. As a result, the defendant and the state were precluded from mentioning the Eagle Mart robbery. The defendant was convicted of robbery and conspiracy to commit robbery, and this appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly denied his motion for a new trial. The defendant advances two arguments to support his claim. First, he argues that he should be granted a new trial because the court abused its discretion when it granted the state's motion in limine to preclude evidence. Second, the defendant asserts that the court improperly allowed the state to call a witness for the sole purpose of impeaching that witness.

We first note our standard of review for challenges to rulings on motions for new trials. "Appellate review

---

[3] "Pursuant to *State* v. *Whelan*, 200 Conn. 743, 753, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986), a prior inconsistent statement may be used during trial for substantive purposes if the statement is signed by the declarant, who has personal knowledge of the facts stated therein, and who testifies at trial and is subject to cross-examination." *State* v. *Conde*, 67 Conn. App. 474, 493 n.9, 787 A.2d 571 (2001), cert. denied, 259 Conn. 927, 793 A.2d 251 (2002).

of a trial court's decision granting or denying a motion for a new trial must take into account the trial judge's superior opportunity to assess the proceedings over which he or she has personally presided. . . . Thus, [a] motion for a new trial is addressed to the sound discretion of the trial court and is not to be granted except on substantial grounds. . . . In our review of the denial of a motion for [a new trial], we have recognized the broad discretion that is vested in the trial court to decide whether an occurrence at trial has so prejudiced a party that he or she can no longer receive a fair trial. The decision of the trial court is therefore reversible on appeal only if there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Whipper*, 258 Conn. 229, 247, 780 A.2d 53 (2001).

A

The defendant argues that the court's denial of his motion for a new trial was improper because the court improperly granted the state's motion in limine. Although the defendant seeks review of the court's denial of his motion for a new trial, his claim relies on the propriety of the court's ruling on the motion in limine. Therefore, we must first review the court's decision on the motion in limine to determine if the defendant's claim has merit.[4]

The state filed the motion in limine to keep any evidence concerning the Eagle Mart robbery out of the trial. It argued that such evidence was irrelevant and prejudicial, and would serve only to distract the jury from the issue before it. The defendant argues on appeal that the granting of the state's motion precluded him from putting certain facts before the jury. Specifically, he asserts that he could not establish that Misuraca's

---

[4] We note that we employ the abuse of discretion standard when reviewing the court's decision on a motion in limine. See *Levesque Builders, Inc.* v. *Hoerle*, 49 Conn. App. 751, 761, 717 A.2d 252 (1998).

confession as to the Eagle Mart robbery cast doubt on his entire confession, including the confession as to the Christy's robbery. Misuraca recanted his confession as to the Eagle Mart robbery one day after he had given it, and two other men were later arrested in connection with the Eagle Mart robbery. The defendant contends that because he was not allowed to present evidence that Misuraca had falsely implicated himself in one robbery, he was precluded from offering that evidence to show that Misuraca had made up the confession as to Christy's robbery as well.

Despite those contentions, our review of the record does not indicate that the court improperly granted the state's motion in limine. The decision on the motion reveals that the court was attempting to fashion a ruling under which relevant aspects of Misuraca's statements would be admitted into evidence, but irrelevant and distracting aspects would not be admitted. The ruling indicated that if the state chose to offer the Christy's evidence for its substance, then the defense could explore both confessions and the recantation in a full cross-examination. The court also determined, however, that evidence relating to the Eagle Mart confession should not be introduced if the state chose to offer Misuraca's confession about Christy's only to impeach his subsequent inconsistent testimony at trial that he and the defendant had not been at Christy's on the night of the robbery. The court apparently concluded that in that situation, the Eagle Mart evidence would be collateral and might distract the jury by getting into the subject matter of another robbery that was not relevant to the impeachment.

We conclude that the court did not abuse its discretion in granting the motion in limine. In ruling as it did, the court properly limited the parties to evidence that was relevant. Although the defendant argues that he should have been allowed to explore the evidence relat-

ing to the Eagle Mart robbery, we cannot say that the court abused its discretion by ruling that that evidence would be irrelevant and should not be admitted if the state offered Misuraca's confession about Christy's only to impeach Misuraca by exposing his prior inconsistent statement with regard to that particular robbery.

There were two separate robberies, and the court was forced to determine the extent to which evidence about one was relevant to the other. Whether Misuraca had recanted his confession as to the Eagle Mart robbery was not relevant to whether he and the defendant had committed the Christy's robbery. We cannot conclude, without more, that the court's decision was an abuse of its discretion. Because we conclude that the court did not abuse its discretion with regard to the motion in limine, and because the defendant bases his claim that the court improperly denied his motion for a new trial on the ruling on the motion in limine, we further conclude that the court did not abuse its discretion in ruling on the defendant's motion for a new trial.

B

The defendant next argues that the court improperly denied his motion for a new trial because it allowed the state to call a witness for the sole purpose of impeaching that witness. The defendant claims that the state had no reason for calling Misuraca as a witness other than to impeach him with his testimony.

As we previously noted, we review orders granting or denying motions for a new trial under an abuse of discretion standard. The record reveals that Misuraca was called as a witness for reasons other than to impeach him. Misuraca corroborated several details of the state's case. Misuraca testified that he had spent the entire day with Buchanan on June 13, 1998. That admission, along with the eyewitness identification of Misuraca as one of the three males seen fleeing Chris-

ty's, corroborated Buchanan's *Whelan*[5] statement implicating the defendant, Misuraca and himself in the Christy's robbery. Accordingly, we conclude that the defendant's argument that the state called the witness only to impeach him is without merit. The court did not abuse its discretion in allowing the state to call Misuraca as a witness.

## II

The defendant's second claim is that the court improperly permitted prosecutorial misconduct. The defendant makes two arguments in support of his claim. First, he avers that the prosecutor improperly argued to the jury the *circumstances surrounding* Misuraca's confessions as to the Christy's and Eagle Mart robberies on June 13, 1998. Second, he contends that the prosecutor used Misuraca's statement for substantive purposes as well as impeachment purposes. The defendant argues that this was improper because the state, in accordance with the court's ruling on the motion in limine, had chosen to use Misuraca's statement for impeachment purposes.

"Our standard of review of prosecutorial misconduct is well established. In analyzing this claim, we do not focus solely on the prosecutor's conduct. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct." (Internal quotation marks omitted.) *State* v. *Hampton*, 66 Conn. App. 357, 369, 784 A.2d 444, cert. denied, 259 Conn. 901, 789 A.2d 992 (2001).

"In determining whether [a] claim of prosecutorial misconduct deprived the defendant of his due process right to a fair trial, we must first decide whether the prosecutor's remarks were, in fact, improper, and, if so,

---

[5] See footnote 4.

whether they substantially prejudiced the defendant." (Internal quotation marks omitted.) *State* v. *Holmes*, 64 Conn. App. 80, 90, 778 A.2d 253, cert. denied, 258 Conn. 911, 782 A.2d 1249 (2001).

"In determining whether prosecutorial misconduct was so serious as to amount to a denial of due process, [courts have] focused on several factors. . . . Included among those factors are the extent to which the misconduct was invited by defense conduct or argument . . . the severity of the misconduct . . . the frequency of the misconduct . . . the centrality of the misconduct to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Internal quotation marks omitted.) *State* v. *Conde*, 67 Conn. App. 474, 500–501, 787 A.2d 571 (2001), cert. denied, 259 Conn. 927, 793 A.2d 251 (2002).

"In determining whether the defendant was denied a fair trial we must view the prosecutor's comments in the context of the entire trial. . . . In examining the prosecutor's argument we must distinguish between those comments whose effects may be removed by appropriate instructions . . . and those which are flagrant and therefore deny the accused a fair trial. . . . The defendant bears the burden of proving that the prosecutor's statements were improper in that they were prejudicial and deprived him of a fair trial." (Internal quotation marks omitted.) *State* v. *Hampton*, supra, 66 Conn. App. 370.

## A

The defendant claims that the state improperly argued the circumstances surrounding the taking of Misuraca's confession on June 13, 1998. Specifically, the defendant argues that it was improper for the prosecutor to call the jury's attention to the fact that Misuraca did not respond when the state police first questioned him. The defendant also states that it was improper for

the prosecutor to argue that Misuraca was allowed to call his parents and to be alone with them prior to his confession, and that the trooper interrogating Misuraca had asked his parents to leave because he thought Misuraca would be more comfortable confessing without them there. The defendant further asserts that he was prevented from examining the circumstances surrounding Misuraca's confession as a result of the court's granting the state's motion in limine to suppress evidence of the Eagle Mart robbery.

The defendant's argument is without merit because the state was not precluded from eliciting testimony concerning the *circumstances surrounding* Misuraca's confession. The state's motion in limine sought to exclude evidence concerning the robbery of Eagle Mart, and it sought to prohibit Misuraca from testifying about that robbery. The court properly granted the state's motion, recognizing that such evidence might distract the jury from the present case. The record does not indicate that the state sought to exclude the facts surrounding Misuraca's confession at the barracks, but rather, the state sought to exclude part of the confession itself. Accordingly, neither the state nor the defendant was precluded from eliciting testimony and commenting on the circumstances of the confession and the conditions at the Troop C barracks.

Because neither party was precluded from discussing the circumstances surrounding Misuraca's confession, we conclude that the defendant has failed to establish that the prosecutor's argument was improper. We need go no further in our analysis to conclude that the court's decision to allow the argument presented by the state did not result in an unfair trial.

B

The defendant also asserts that the prosecutor argued facts from Misuraca's confession for substantive pur-

poses when the confession had been introduced only for impeachment purposes. The defendant contends that the prosecutor's statements during closing argument encouraged the jury to use substantively facts from Misuraca's confession as to the Christy's robbery.

We decline to review the defendant's claim because it is inadequately briefed. See *In re Kachainy C.*, 67 Conn. App. 401, 413, 787 A.2d 592 (2001). As explicated by the previously discussed case law, a critical aspect in determining whether prosecutorial misconduct deprived the defendant of his right to due process is whether, and to what extent, the court gave the jury instructions that cured the alleged harm resulting from the prosecutor's conduct. Additionally, our law directs that we view the alleged misconduct in the context of the entire trial.

In the present case, however, we have no way of knowing what curative measures or appropriate instructions were adopted by the court in its final jury instructions as a result of the prosecutor's remarks because the defendant has not supplied us with a transcript of the final jury charge. Without the transcript, we cannot properly take into account a factor that is relevant to our analysis. We also cannot view the prosecutor's remarks in the context of the entire trial because we cannot weigh the comments against *all* the instructions given by the court.

Although it is conceivable that we could apply the other factors to which our case law directs our attention, absent analysis of the final charge and without being able to review the prosecutor's comments in the context of the entire trial, we decline to afford review of the allegedly improper comments because of the somewhat complex nature of the court's ruling on the motion in limine. Additionally, we note that to the point of its final instruction, the court had given the jury

adequate instructions as to the limited use for which Misuraca's confession about Christy's had been admitted. Despite that, we will not extrapolate from those instructions to fill in the gap left by the defendant's omission from the record of the court's final charge. As a result, we decline to review the defendant's claim.

The judgment is affirmed.

In this opinion the other judges concurred.